ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
Rover Construction Company ) ASBCA No. 60703
)
Under Contract No. W91B4L-11-P-0115 )

APPEARANCE FOR THE APPELLANT: Mr. Al Waris
General Director

APPEARANCES FOR THE GOVERNMENT: Raymond M. Saunders, Esq.
Army Chief Trial Attorney
MAJ Elinor J. Kim, JA
Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE PROUTY ON THE GOVERNMENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

The United States Army (Army) has moved to dismiss this appeal for lack of jurisdiction, contending that appellant failed to file a certified claim with the contracting officer prior to bringing its appeal to the Board as required by the Contract Disputes Act, 41 U.S.C. §§ 7101-7109 (CDA). Appellant contests that assertion, and has submitted evidence of numerous email communications between it and the Army in which it repeatedly sought payment for the work that it alleged it performed under the contract at issue. Because we find that the email traffic supports a finding that appellant presented the requisite claim to the contracting officer, we deny the Army's motion.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION[1]

1. On 7 November 2010, the Army awarded Contract No. W91B4L-11-P-0115 (contract) to appellant for the rental and servicing of portable latrines in the amount of

---

[1] We preface our statement of facts by noting that the Rule 4 file produced by the Army in this appeal was substantially incomplete with respect to the email traffic between appellant and the Army. After appellant presented many additional emails in response to the Army's motion, we directed the Army to search for additional email correspondence between the parties, including an invoice apparently provided by appellant to the contracting officer. Nothing was found by the Army. The Army did not contest the authenticity of the emails and attachments produced by appellant, and, as will be seen herein, appellant has provided adequate documentation for us to find (for purposes of this motion) that these emails were sent and received.

1,961,556 Afghani (AFN)(R4, tab 1). The contract contemplated performance for a six-month period commencing in November 2010 (*id.*).

2. By email dated 31 October 2011, appellant contacted two Army representatives and informed them that, "I have been remove the portable latrine from the site Coz i did not receive any payment yet" (Bd. corr. file, app. email dtd. 12 August 2016 (app. email attachs.) (syntax in original).[2] By email dated 18 November 2011, appellant again contacted one of those Army representatives, sending as an attachment a document entitled "Signed award.doc" and stating "I HAVE BEEN WORK FOR 1YEAR BUT I DID NOT RECEIVE ANY PAYMENT YET FROM THIS CONTRACT" (*id.*).[3]

3. By email dated 26 October 2012, an Army procurement advisor, Yasin Husainy, contacted appellant asking it to "confirm if you have been paid in full for the subject contract. [I]f not please keep invoicing till the end, then we would be able to close this contract out." (App. email attachs.) Appellant responded by email dated 27 October 2012, stating "Still now i did not receive any payment how you can close the Contract" (*id.*).

4. By email dated 1 November 2012, Mr. Husainy contacted appellant a second time, requesting the same information sought in his 26 October 2012 email. Appellant responded by email shortly thereafter and stated, "No one has been paid for this contract until i did not receive payment you can't close the contract." (App. email attachs.)

5. As demonstrated by the emails submitted by appellant, what followed was an extended conversation over a three-day period in November 2012 between appellant and an Army contracting officer, Roya Sterner, concerning appellant's request for payment. Four of those emails appear in the Rule 4 file. (R4, tab 9)

6. Several of the emails are dated 10 November 2012. The first was a request from appellant to Ms. Sterner requesting her to "[p]lease solve this issue as well" (app. email attachs.). The nature of the issue is not explained in this email. Ms. Sterner responded, advising appellant that, "on any contract that you claim you have not been paid, send me ONE invoice…with ONE EFT form…. I will then research the issue." (*Id.*)

7. Appellant responded to Ms. Sterner's questions by forwarding three attachments.[4] The first was named "1_Month_Invoice_W91B4L-11-P-0115.xls," the

---

[2] Syntax and punctuation are in the original quotes throughout this opinion.

[3] The referenced attachment was not included in the emails appellant provided to the Board.

[4] Appellant's submission includes two versions of this particular email, one of which omitted the image of the attachment entitled "11-P-0115-Conformed.pdf". We note this discrepancy, but do not consider it germane to the question of whether we possess jurisdiction over this appeal.

second was named "1Month EFT Form DARI-W91B4L-11-P-0115.XLSX" and the third was named "11-P-0115-Conformed.pdf" (app. email attachs.).[5] Ms. Sterner's reply to that email stated as follows:

> Sir, Your attached invoice should have the number 6 written in place of "LS" under quantity. You must correct this. However, how is it that your company was not paid for all 6 months? You need to provide me any proof, quality control records or emails showing that your company actually provided services. If you cannot provide me any proof, I am unable to move forward with getting you paid. Who was your last COR at FOB Lindsey?

(App. email attachs.; R4, tab 9 at 1) Appellant responded shortly thereafter, indicating that it would "fix the invoice and send to you back" (app. email attachs.).

8. In the final communication taking place on 10 November 2012, appellant emailed Ms. Sterner what it identified as the "Correct invoice," the first named "1_Month_Invoice_W91B4L-11-P-0115.xls" and the second named "1Month EFT Form DARI-W91B4L-11-P-0115.XLSX" (app. email attachs.; R4, tab 9 at 1).[6] The record does not reflect that Ms. Sterner raised any further issues with respect to the contents of this invoice.

9. By email dated 12 November 2012, Ms. Sterner wrote to appellant stating as follows:

> Sir,
>
> You will need to provide me with all the proof you have that work was completed on this contract. Please provide me with a formal letter on your company letterhead explaining

---

[5] Appellant's copy of this email showed images of the attachments but did not include the attachments themselves. The version appearing in the Rule 4 file does not show or include any of the three attachments (app. email attachs.; R4, tab 9 at 2). Because subsequent emails from the Army referenced the attachments (e.g., R4, tab 9 at 1), we conclude it more likely than not, for purposes of this motion, that the copies of the emails provided by appellant, which included the attachments, are authentic.

[6] Appellant's version of this email showed images of these attachments but did not include the attachments themselves (app. email attachs.). The version of this email that appears in the Rule 4 file does not show or include either of these attachments (R4, tab 9 at 1).

why you were not paid. It should be a coherent narrative that explains the entire situation in a way that the average person can understand. You should also attach any accompanying DD250s or any piece of information that will help me make a decision regarding payment on this contract.

(App. email attachs.; R4, tab 9 at 1)

10. On 13 November 2012, appellant emailed Ms. Sterner asking, "What proof you need tell me also @ that time i email several time but i did not find any thing" (app. email attachs.). Ms. Sterner advised appellant to "[s]end me a formal letter with a narrative on your company letterhead" (*id.*). The record contains no evidence that any further communications between appellant and Ms. Sterner occurred.

11. By email dated 26 November 2012, Mr. Husainy, with whom appellant had communicated the previous month, emailed appellant requesting it to "[p]lease update about your payment" (app. email attachs.). Appellant responded by email dated 27 November 2012, stating, "Sir, I did not receive any payment yet" (*id.*). Approximately seven weeks later, by email dated 16 January 2013, Mr. Husainy emailed appellant again, asking the following:

> Please update us about the subject contract if you have been paid in full, we are going to close the subject contract if it is paid in full…. [P]lease reply it within 24 hours, if you didn't reply within the given time, we will put this email on the file and assume this contract has been paid in full….

(*Id.*) Appellant replied by email dated 18 January 2013, stating, "Still now I did not receive full payment" (*id.*).

12. The Army's Rule 4 file indicates that, by email dated 16 March 2013, the Army contacted appellant requesting it to sign a "release of claims" memo and submit any invoices to the contracting officer or his representative (R4, tab 10 at 1). A memorandum for the record (MFR) dated 20 March 2013 indicates that the contracting officer intended to waive the requirement for a release of claims signed by the contractor to continue with the closeout of the contract, stating that "[t]he contractor provide[d] invoices but was unable to provide any documentation i.e. DD 250, emails, receiving [sic] reports, etc. to show that they provided the service" (R4, tab 11).

13. The Rule 4 file also includes emails from April 2013 between and among several Army personnel seeking information about appellant's contract. By email dated 7 April 2013, Ms. Sterner queried personnel at the Defense Finance and Accounting

4

Service (DFAS) about a CAPS[7] report for appellant's contract (R4, tab 13 at 2). Internal communications among various DFAS personnel indicates that as of 11 April 2013, DFAS had access to the contract "but no invoices have been received" (*id.* at 1).

14. By modification dated 22 January 2014, the Army de-obligated all remaining funds for the contract (R4, tab 14). A contract completion statement dated 3 February 2014 referenced a memorandum from the contracting officer documenting "attempts to contact Vendor for [illegible] of claims, negative response from Vendor" (R4, tab 15).[8] The contract completion statement indicated that "all essential elements necessary to complete contract close out" had taken place (*id.*).

15. Appellant filed a notice of appeal with the Board by email dated 24 July 2016, stating that it had not been paid for work it performed for the Army under the contract. Appellant requested that it be "introduced" to the relevant contracting officer so it could forward invoices for which it alleged it had not been paid. Appellant's notice of appeal did not include a copy of a claim or a contracting officer's final decision thereon. The Board docketed appellant's appeal on 26 July 2016.

16. On 8 August 2016, the Army moved to dismiss appellant's appeal for lack of jurisdiction, contending that appellant never submitted a certified claim to the contracting officer, and characterizing appellant's notice of appeal as an initial request for payment (gov't mot. at 3). In response, by email dated 12 August 2016, appellant produced a total of 24 emails between it and the Army, including the 19 discussed herein.

17. By letter dated 14 September 2016, the Army forwarded to the Board and appellant a copy of its Rule 4 file. Because the Rule 4 file contained only four of the 24 emails provided by appellant, by order dated 23 September 2016, we directed the Army to compare its records with the emails submitted by appellant and to file with the Board the complete email correspondence, including attachments, between Ms. Sterner and appellant. The Army was specifically directed to provide the invoices attached to two of the emails dated 10 November 2012 between appellant and Ms. Sterner.

18. By letter dated 21 October 2016, the Army responded to our 23 September 2016 order. The Army described the extensive efforts it undertook to locate any additional email correspondence between Ms. Sterner and appellant,

---

[7] CAPS is an acronym for Computerized Accounts Payable System.
[8] Although the contract completion statement does not make it clear, we assume for purposes of this motion that the referenced memorandum is the MFR dated 20 March 2013, in which the contracting officer stated that appellant had provided invoices but no "documentation...to show that they provided the service" (R4, tab 11).

including the attached invoices, but stated it was unable to locate the invoices or any additional email correspondence beyond what it provided to us in the Rule 4 file.

19. By order dated 27 October 2016, we directed appellant to provide the document named "1_Month_Invoice_W91B4L-11-P-0115.xls" that was identified as an attachment to two of its email communications with Ms. Sterner on 10 November 2012. Appellant responded to the Board's order by email dated 28 October 2016, stating "Please find attached Invoice and EFT Form was send to the contracting office on that time." Attached to appellant's email was an invoice dated 5 November 2011 for portable latrine rental and service between 10 November 2010 and 9 May 2011, in the amount of AFN 1,886,112. Also attached was an EFT (electronic transfer of funds) form dated 5 November 2010 with the same currency figure as the invoice.

20. Using rates of exchange for Afghanis to U.S. dollars as set forth on the Department of Treasury's website, as of 31 December 2012, the dollar value of the invoice was $36,411.43.

## DECISION

An appellant bears the burden of proving the Board's subject matter jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exchange Service*, 846 F.2d 746, 748 (Fed. Cir. 1988); *United Healthcare Partners, Inc.*, ASBCA No. 58123, 13 BCA ¶ 35,277 at 173,156. Pursuant to the CDA, "[e]ach claim by a contractor against the Federal Government relating to a contract shall be submitted to the contracting officer for a decision." 41 U.S.C. § 7103(a)(1). Thus appellant must prove by a preponderance of the evidence that it submitted a claim for payment to the contracting officer in order to establish our jurisdiction. *Reynolds*, 846 F.2d at 748; *United Healthcare Partners*, 13 BCA ¶ 35,277 at 173,156-57.

Although the CDA itself does not define the term "claim," the Federal Acquisition Regulation (FAR) does:

> *Claim* means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract.... A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim. The submission may be converted to a claim, by written notice to the contracting officer as provided in 33.206(a), if it is disputed either as to liability or amount or is not acted upon in a reasonable time.

6

FAR 2.101. While a claim need not be submitted in any particular form or use any particular wording, a proper CDA claim must include "(1) adequate notice of the basis and amount of a claim and (2) a request for a final decision." *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1328 (Fed. Cir. 2010). The contractor's request for a decision can be implied from the context of the submission. *James M. Ellett Construction Co. v. United States*, 93 F.3d 1537, 1543 (Fed. Cir. 1996); *Lael Al Sahab & Co.*, ASBCA No. 58346, 13 BCA ¶ 35,394 at 173,663. In determining whether a contractor has submitted a claim, the Board applies a common sense analysis on a case-by-case basis, examining the totality of the correspondence between the parties. *CCIE & Co.*, ASBCA Nos. 58355, 59008, 14-1 BCA ¶ 35,700 at 174,816.

The Army argues that the Board lacks jurisdiction over this appeal, alleging that appellant failed to submit a certified claim to the contracting officer (gov't mot. at 3). Focusing exclusively on the contents of appellant's notice of appeal, the Army characterizes it as an initial request for payment rather than a claim because it "only indicates that [appellant] had not been paid in full and fails to specify any details that would amount to a claim" (*id.*).

The Army's analysis fails to take into account the 24 emails submitted by appellant in response to the Army's motion to dismiss, four of which also appear in the Army's Rule 4 file. The totality of the parties' correspondence indicates that between 31 October 2011 and 18 January 2013, appellant consistently and repeatedly informed the Army that it was still awaiting payment under the contract (SOF ¶¶ 2-11). It also makes clear that, by November 2012, the Army was fully aware of appellant's request that it be paid (SOF ¶¶ 5-11). On 10 November 2012, appellant provided an invoice to the Army contracting officer, Ms. Sterner, which she then requested be resubmitted with a correction to the quantity column (SOF ¶ 7). Appellant complied with that request, and Ms. Sterner raised no further objection to the invoice's contents (SOF ¶¶ 8-10). Thereafter, by emails dated 27 November 2012 and 18 January 2013, appellant again informed the Army that it still had not been paid for the work it performed under the contract (SOF ¶ 11). Through these repeated communications, appellant converted its routine request for payment into a claim within the meaning of FAR 2.101, and the law imposes no requirement of proof of performance to "convert an invoice into a claim after it becomes disputed or is not timely acted upon." *CCIE & Co.*, 14-1 BCA ¶ 35,700 at 174,817. Given that the dollar value of the claim was less than $100,000 (SOF ¶ 20), the CDA required no certification of the claim. *See* 41 U.S.C. § 7103(b).

7

## CONCLUSION

The Army's motion to dismiss for lack of jurisdiction is denied.

Dated: 1 March 2017

J. REID PROUTY
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 60703, Appeal of Rover Construction Company, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

8